IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and ARTHUR H. BUNTE, JR., as Trustee, *Plaintiffs*, v. CALDWELL & HARTUNG, INC., an Iowa corporation, *Defendant*. | Case No. 18 C 2075 Honorable District Judge |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund"), Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health Fund" and with the Pension Fund collectively referred to as the "Funds"), and Arthur H. Bunte, Jr., one of the Funds' present trustees, allege as follows:

## JURISDICTION AND VENUE

1. This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001, *et seq.*, and is a suit to recover employer contributions and withdrawal liability owed to the Funds by Defendant in accordance with applicable collective bargaining and trust fund agreements, and as a result of an employer's withdrawal from the pension plan.

2. This Court has jurisdiction over this action under sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c).

3. Venue lies in this Court under sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Funds are administered at their principal place of business in Rosemont, Illinois. Venue is also proper in this Court pursuant to the forum selection clause contained in the Funds' Trust Agreements which designate this district as the appropriate forum for lawsuits to collect unpaid contributions and withdrawal liability.

## PARTIES

4. The Pension Fund is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3), with its principal and exclusive office located at 9377 West Higgins Road in Rosemont, Illinois.

5. The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

6. The Health Fund is a multiemployer employee welfare benefit plan and trust, with its principal and exclusive office located at 9377 West Higgins Road in Rosemont, Illinois.

7. The Health Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the IBT on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to participants and beneficiaries of the Health Fund and paying the administrative expenses of the Health Fund.

8. Plaintiff Arthur H. Bunte, Jr. is a present trustee and fiduciary of the Funds within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Funds within the meaning of section 4001(a)(10) of ERISA, 29 U.S.C. § 1301(a)(10). The Trustees administer the Funds at 9377 West Higgins Road, Rosemont, Illinois.

9. Pursuant to sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Arthur H. Bunte, Jr., are authorized to bring this action on behalf of the Funds, their participants and beneficiaries for the purpose of collecting unpaid contributions and withdrawal liability.

10. Defendant Caldwell & Hartung, Inc. ("Caldwell") is a corporation organized under the laws of the State of Iowa. Caldwell is an "employer" and a "party-in-interest" as those terms are defined by sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

## **BACKGROUND INFORMATION**

11.     Local Union No. 238 ("Local 238") of the IBT is a labor organization which represented, for the purpose of collective bargaining, certain employees of Caldwell, and employees of other employers in industries affecting interstate commerce.

12.     During all relevant times, Caldwell and Local 238 were parties to a collective bargaining agreement pursuant to which Caldwell was required to make contributions to the Funds on behalf of certain of its covered employees.

13.     Caldwell agreed to be bound by the terms of the Pension Fund Trust Agreement and the Health Fund Trust Agreement (collectively the "Trust Agreements") and all rules and regulations promulgated by the Trustees under said Trust Agreements.

14.     Under the Trust Agreements, Caldwell was required to "remit continuing and prompt contributions to the [Funds] as required by the applicable collective bargaining agreement ..."

15.     For periods prior to February 15, 2010, the Pension Fund Trust Agreement provided that:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions, withdrawal liability or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged. Any judgment against an employer for contributions or withdrawal liability owed to this Fund shall

include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions or withdrawal liability. The interest rate after entry of a judgment against an Employer for contributions or withdrawal liability shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged and shall be compounded annually.

16. For periods on and after February 15, 2010, the Pension Fund Trust Agreement provides that:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions, withdrawal liability and/or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due contributions and/or other money (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater). ... Any judgment against an Employer for contributions and/or withdrawal liability owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions and/or withdrawal liability. The interest rate after entry of a judgment against an Employer for contributions and/or other amounts due (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%)

plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

17. The Health Fund Trust Agreement also contains provisions that are identical to the provisions quoted in the above paragraphs 15 and 16, except there are no references to "withdrawal liability" in the Health Fund Trust Agreement provisions.

18. The Funds rely upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks worked by the covered employees. Based upon the employee work history reported by the employers, the Funds bill the employers for contributions.

19. Under this self-reporting system, participating employers initially establish a base group of employees for whom contributions are due. Thereafter, the employer is required to notify the Funds on a monthly basis of any changes in the employment status of individuals covered by the collective bargaining agreement (e.g., layoffs, new hires, terminations, etc.). The Funds rely upon these reports submitted by employers to prepare a monthly contribution bill that is sent to the employer. If no changes are reported by the employer, the Funds assume that the same employees are still working and bill the employer accordingly.

20. Section 515 of ERISA, 29 U.S.C. § 1145, provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

21. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan --

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of--

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

22. During the period of December 28, 2008 through December 30, 2017, Caldwell reported the work history of its covered employees to the Funds.

## **COUNT I – AUDIT FINDINGS**

23. Plaintiffs reallege and incorporate by reference paragraphs 1-22 as and for paragraph 23 of Count I of this Complaint.

24. Count I is brought on behalf of both Funds.

25. Pursuant to the Trust Agreements, the Funds are permitted to audit work history records of participating employers in order to verify the accuracy and

completeness of the reported employee work history submitted as part of the self-reporting system.

26. The Funds audited Caldwell's records to verify the accuracy and completeness of employee work history reported to the Funds by Caldwell during the period of December 28, 2008 through February 27, 2016.

27. The audit revealed that Caldwell had failed to accurately report the work history of its covered employees to the Funds during the period of December 28, 2008 through February 27, 2016.

28. Caldwell breached the provisions of ERISA, the collective bargaining agreements and the Trust Agreements by failing to pay all of the contributions (and interest due thereon) owed to the Funds for the period of December 28, 2008 through February 27, 2016.

29. Caldwell owes the Pension Fund $729,132.90 for unpaid contributions (not including interest) for the period of December 28, 2008 through February 27, 2016, as a result of the conduct set forth in paragraph 28.

30. Caldwell owes the Health Fund $269,550.20 for unpaid contributions (not including interest) for the period of December 28, 2008 through February 27, 2016, as a result of the conduct set forth in paragraph 28.

31. Upon information and belief, Caldwell has also failed to accurately report the work history of its covered employees to the Funds for the period of February 28, 2016 through December 30, 2017.

32. Caldwell may also owe the Funds additional amounts for unpaid contributions for the period of February 28, 2016 through December 30, 2017, which

cannot be calculated with specificity at this time, but will be determined in the course of discovery, as a result of the conduct set forth in paragraph 31.

33. Under the Trust Agreements, employers who fail to pay amounts revealed to be owed by an audit are required to pay all costs incurred in connection with the audit.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendant in favor of the Funds, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and under the Trust Agreements for:

    (i) the unpaid contributions owed to the Funds by Defendant;

    (ii) for contributions due for periods prior to February 15, 2010, interest on the unpaid contributions computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged;

    (iii) for contributions due for periods on and after February 15, 2010, interest on the unpaid contributions computed and charged at the greater of: (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

    (iv) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

  (v) attorneys' fees and costs; and

  (vi) audit fees and costs;

 (b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

 (c) For such further or different relief as this Court may deem proper and just.

### **COUNT II – JUNE 2016 TROUGH DECEMBER 2017 BILLINGS**

34. Plaintiffs reallege and incorporate by reference paragraphs 1-22 as and for paragraph 34 of Count II of this Complaint.

35. Count II is brought on behalf of the Pension Fund only.

36. Based upon the employee work history reported to the Pension Fund, Caldwell has failed to pay all of the contributions owed to the Pension Fund during the period of May 29, 2016 through December 30, 2017, and has breached the provisions of ERISA, the collective bargaining agreements and the Pension Fund Trust Agreement by failing to pay all of the contributions (and interest due thereon) owed to the Pension Fund.

37. Despite demands that Caldwell perform its statutory and contractual obligations with respect to making contributions to the Pension Fund, Caldwell has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth in paragraph 36.

38. Caldwell owes the Pension Fund $81,122.51 for unpaid contributions (not including interest) for the period of May 29, 2016 through December 30, 2017, as a result of the conduct set forth in paragraph 36.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendant in favor of the Pension Fund, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for:

    (i) the unpaid contributions owed to the Pension Fund based upon the employee work history reported by Defendant;

    (ii) interest on the unpaid contributions computed and charged at the greater of: (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

    (iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

    (iv) attorneys' fees and costs;

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c) For such further or different relief as this Court may deem proper and just.

## **COUNT III – WITHDRAWAL LIABILITY**

39. Plaintiffs reallege and incorporate by reference paragraphs 1-22 as and for paragraph 39 of Count III of this Complaint.

40. Count III is brought on behalf of the Pension Fund only.

41. Caldwell is the "employer" for purposes of the determination and assessment of withdrawal liability under Title IV of ERISA.

42. The Pension Fund determined that on or about December 30, 2017, Caldwell permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Pension Fund within the meaning of section 4203 of ERISA, 29 U.S.C. § 1383 (the "2017 Withdrawal").

43. As a result of the 2017 Withdrawal, the Pension Fund determined that Caldwell incurred withdrawal liability to the Pension Fund in the principal amount of $8,078,465.45, as determined under section 4201(b) of ERISA, 29 U.S.C. § 1381(b) (the "Withdrawal Liability").

44. On or about January 15, 2018, Caldwell received a notice and demand for payment of the Withdrawal Liability issued by the Pension Fund in accordance with sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand"). The Notice and Demand demanded full payment of the entire amount of the Withdrawal Liability by February 1, 2018, pursuant to section 4219(c)(5)(B) of ERISA, 29 U.S.C. § 1399(c)(5)(B), and Appendix E, § 5(e)(2) of the Pension Fund Plan Document. The amount demanded was $8,078,465.45, the balance owed at that time on the Withdrawal Liability.

45. Pursuant to sections 4219(c)(2) and 4221(d) of ERISA, 29 U.S.C. §§ 1399(c)(2) and 1401(d), withdrawal liability payments must be made in accordance with the schedule set forth by the plan sponsor notwithstanding any request for review or demand for arbitration.

46. Caldwell failed to make the Withdrawal Liability payment to the Pension Fund.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendant in favor of the Pension Fund, pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), for:

    (i) the past due Withdrawal Liability payment in the amount of $8,078,465.45;

    (ii) interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

    (iii) an amount equal to the greater of interest on the past due withdrawal liability or liquidated damages of 20% of the past due withdrawal liability; and

    (iv) attorney's fees and costs.

(b) Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, and with said interest to be compounded annually; and

- 14 -

    (c)    For such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/Anthony E. Napoli*
Anthony E. Napoli
Attorney for Plaintiffs
Central States Funds
9377 W. Higgins Road, 10th Floor
Rosemont, Illinois 60018-4938
(847) 939-2469
ARDC # 06210910

March 22, 2018    tnapoli@centralstates.org